UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BURLINGTON INSURANCE COMPANY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-2002 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 51, 55 |
| | : | | |
| OKIE DOKIE, INC. and C.J. THOMAS, INC | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

Granting in Part and Denying in Part the Plaintiff's Motion for Summary Judgment; Denying C.J. Thomas' Cross- Motion for Summary Judgment

I. INTRODUCTION

This case is before the court on the plaintiff's motion for summary judgment and on defendant C.J. Thomas, Inc.'s cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff asserts that it is entitled to summary judgment on its claims against both defendants because there is no genuine issue of material fact. Because the plaintiff has not shown that defendant C.J. Thomas, Inc. ("C.J. Thomas") violated a duty of care, the court denies summary judgment as to the negligent misrepresentation claim. The court grants the plaintiff's motion for a declaration that D.C. Code § 31-4314 defeats coverage under the insurance policy because that insurance application contained a false statement that materially affected the plaintiff's decision to insure the defendant. Because the plaintiff has met its burden with respect to its unjust enrichment claim against defendant Okie Dokie, Inc., ("Okie Dokie") the court grants the plaintiff's motion for summary judgment as to that claims. Because the

defendants have not provided any substantive justification for withholding an award of prejudgment interest, the court grants the plaintiff's motion for an award of prejudgment interest.

## II. BACKGROUND

### A. Factual History

Defendant Okie Dokie is the owner and operator of Dream, a nightclub in the District of Columbia. Compl. ¶¶ 8, 10. Defendant C.J. Thomas, an insurance broker, prepared an application for insurance on behalf of Okie Dokie for a general commercial liability insurance policy to cover Dream. *Id.* ¶¶ 23, 24. The application described Dream as a "Restaurant/Bar with Dance Floor," and stated that: (1) the previous insurance carrier cancelled its policy primarily because Dream had a dance floor; (2) Dream does not sponsor "Social Events;" and (3) Dream's $4 million in total sales is comprised of $3 million in food sales and $1 million in liquor sales. *Id.* ¶¶ 25-30. The plaintiff, Burlington Insurance Company ("Burlington"), alleges that it relied on the statements in the application when it issued a commercial general liability policy to Okie Dokie on June 28, 2002. *Id.* ¶¶ 34, 36.

On August 10, 2002, an underaged drunk driver who had allegedly been drinking at Dream, struck and killed a police officer named Hakim Farthing. *Id.* ¶ 44. Farthing's estate sued Okie Dokie for $50 million on October 1, 2003 ("*Farthing* Action"). *Id.* ¶¶ 42, 45. Burlington settled the *Farthing* action for $410,000 on August 21, 2004. Pl.'s Mot. For Summ. J. ("Pl.'s Mot.") at 5. The plaintiff also alleges that it incurred legal costs to defend Okie Dokie in the *Farthing* action. *Id*.

## B. Procedural History

In response to the *Farthing* Action, Burlington filed this action against Okie Dokie and C.J. Thomas on September 26, 2003. *See generally* Compl. With regard to Okie Dokie, Burlington seeks: (1) a declaration that Burlington had no duty to defend or indemnify Okie Dokie in the *Farthing* Action; (2) rescission of the insurance policy; and (3) restitution for all costs Burlington has paid with respect to the *Farthing* Action. *Id*. ¶¶ 58, 64, 69. Burlington moves for summary judgment on the declaratory relief and unjust enrichment counts. Pl.'s Mot. at 2.

With regard to C.J. Thomas, Burlington seeks damages stemming from alleged negligent misrepresentation in the insurance application. Compl. ¶ 76. The complaint also alleges that C.J. Thomas failed to disclose that Dream: (1) is a nightclub, (2) hosts concerts, (3) seeks the patronage of eighteen to twenty year olds, (4) derives over 25% of its revenue from the sale of alcoholic beverages, and (5) regularly features an "open bar." *Id*. ¶ 72. The plaintiff asserts that "C.J. Thomas was under a duty to disclose one or more" of these facts. *Id*. ¶ 73. The complaint further alleges that these "false statements and omissions were material" to the plaintiff's decision to issue the policy to Okie Dokie. *Id*. ¶ 74. The plaintiff claims that it "reasonably relied on one or more of the false statements and omissions. *Id*. ¶ 75.

Burlington moves for summary judgment on its claims against Okie Dokie and C.J. Thomas.[1] C.J. Thomas cross-moves for summary judgment on the negligent misrepresentation claim. The court now turns to these motions.

---

[1] Discovery in this case closed on September 30, 2005.

### III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## B. The Negligent Misrepresentation Claim Against C.J. Thomas

The plaintiff argues that it is entitled to summary judgment on its claim against defendant C.J. Thomas because it has fulfilled the elements of a negligent misrepresentation claim under District of Columbia law. Pl.'s Mot. at 6. C.J. Thomas, on the other hand, argues that District of Columbia law is inapplicable. Def. C.J. Thomas Company, Inc.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of its Cross-Mot. For Summ. J. ("C.J. Thomas' Opp'n") at 6. In the alternative, C.J. Thomas argues that it is entitled to summary judgment because the plaintiff cannot meet the elements of negligent misrepresentation under District of Columbia law. *Id*. at 7 n.1. For the reasons that follow, the court denies the plaintiff's motion for summary judgment on the negligent misrepresentation claim against defendant C.J. Thomas.

### 1. District of Columbia Law Applies to the Negligent Misrepresentation Claim

The parties in this case are completely diverse and the amount in controversy is over $75,000. Federal jurisdiction is accordingly based on diversity of citizenship. 28 U.S.C. § 1332(a). To determine which state's laws apply to the instant suit, this court applies the District of Columbia choice of law rules. *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996) (explaining that "[a] federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state").

The choice of law rules in the District of Columbia require the court to "evaluate the

governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law." *Dist. of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995). The jurisdiction with the most significant interest in insurance cases is "either the place of the occurrence that requires coverage or the insured's headquarters." *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt. Inc.*, 205 F.R.D. 1, 9 (D.D.C. 2000) (citing *Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 968, 972-73 (D.D.C. 1991)). Because Dream's headquarters are in the District of Columbia, and because the *Farthing* action was brought in the District of Columbia, the court determines that District of Columbia law applies to the negligent misrepresentation claim.

### 2. Negligent Misrepresentation

Under District of Columbia law, a claim for negligent misrepresentation requires the claimant to show that:

> (1) the defendant made a false statement or omission of a fact,
> (2) the statement was in violation of a duty to exercise reasonable care,
> (3) the false statement or omission involved a material issue,
> (4) the plaintiff[] reasonably relied and to [its] detriment relied on the false information, and
> (5) the defendant's challenged conduct proximately caused injury to the plaintiff[].

*In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 74 (D.D.C. 2003) (citing *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999)). Because the plaintiffs have not shown that defendant C.J. Thomas violated its duty of care, the court denies the plaintiff's motion for summary judgment on its negligent misrepresentation claim against C.J. Thomas.

This court previously ruled that, under D.C. law, "commercial suppliers of information, such as C.J. Thomas," owe a duty of care "to those intended to receive the information, even if

the recipient is a third party, like Burlington, that has no privity with the supplier." *Burlington Ins. Co. v. Okie Dokie Inc.*, 329 F. Supp. 2d 45, 49 (D.D.C. 2004) (citing Restatement (Second) of Torts § 552 cmt. g. (1977)). "[T]he duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes." *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979).

White, an account executive at C.J. Thomas, prepared a number of insurance applications on behalf of Dream's owners, including a liquor liability application and the general commercial liability application at issue in the instant suit. Pl.'s Mot., Ex. B ("White Dep.") at 7:5; Okie Dokie's Opp'n at 7. With regards to the liquor liability application, on November 15, 2001, White prepared an application stating that liquor sales could be as high as $1.5 million. White Dep. at 48:12-18, 49:4-5; Pl.'s Reply at 11. That is, the liquor liability application originally stated that liquor sales could be as high as 40% of total sales. Eleven days later, on November 26, 2001, White changed the estimated liquor sales on the liquor liability application to $1 million, or 25% of total sales. White Dep. at 48:2-12, 159:1-11; Pl.'s Reply at 11. In March 2002, when filling out the plaintiff's general commercial liability application, White used the $1 million figure from the latter liquor liability application. Pl.'s Reply at 11. White also testified that she knew that Burlington would not renew its coverage if liquor sales were higher than 25% of total annual sales. White Dep. at 128:9-14.

White testified that the change in estimated liquor sales in November 2001 did not "raise any red flags with her" because the liquor liability application only requires that an establishment classified as a restaurant have liquor sales that are less than 75% of its annual total sales. *Id.* at 159-160. She also stated that it did not seem strange to her that Dream's estimates had changed

7

because "it was a new business." *Id.* at 153.

The plaintiff argues that White's failure to alert it to the changed estimates in the liquor liability application constitutes a violation of White's duty of care. Pl.'s Mot. at 9. The duty of care required that White "exercise such reasonable care and skill as is expected of an insurance agent acting under similar circumstances." *Morrison*, 407 A.2d 555, 560-61. Neither party, however, explains whether White acted with the reasonable care and skill expected of an insurance agent acting under similar circumstances. The plaintiff only states that C.J. Thomas was "indisputably" obligated to disclose that a previous liquor application contained a different sales estimate. Pl.'s Mot. at 9. While it is possible that C.J. Thomas' duty of care required that White notify the plaintiff of the changes in sales estimates in unrelated insurance applications, the plaintiff has not shown that the standard of care did, in fact, require such an action. The plaintiff, therefore, has not met its burden of showing that C.J. Thomas violated the duty of care. *Superior Bank, F.S.B. v. Tandem Nat'l Mortgage, Inc.*, 197 F. Supp. 2d 298, 339 n.8 (D. Md. 2000) (declining to express an opinion on the plaintiff's negligent misrepresentation claim because the extent of the duty of care owed by the defendant could not be determined on the record).[2] The court therefore denies the plaintiff's motion for summary judgment on the negligent misrepresentation claim.

---

[2]   The common law of Maryland is "the source of the District's common law and an especially persuasive authority when the District's common law is silent." *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983); *Saylab v. Don Juan Rest., Inc.*, 332 F. Supp. 2d 134, 142-43 (D.D.C. 2004); *Burlington Ins. Co. v. Okie Dokie, Inc. et al.*, 368 F. Supp. 2d 83, 88 n.1 (D.D.C. 2005) (explaining that "Maryland authorities interpreting Maryland common law constitute 'powerful precedent' when District of Columbia courts interpret District of Columbia common law because District of Columbia common law is based on Maryland common law") (citing *Newby v. United States*, 797 A.2d 1233, 1243 n. 13 (D.C. 2002)).

The court notes that its denial of the plaintiff's motion for summary judgment does not automatically entitle defendant C.J. Thomas to win on its cross-motion for summary judgment. 11 JAMES WM. MOORE ET AL., MOORE'S FED. PRACTICE § 56.10[6] (3d. ed. 2004) (explaining that "denial of one cross-motion does not imply the grant of the opponent's cross-motion"). Indeed, even C.J. Thomas recognizes that "there is an issue of fact as to whether C.J. Thomas failed to exercise reasonable care." C.J. Thomas' Opp'n at 9 n.2. The court accordingly denies defendant C.J. Thomas' cross-motion for summary judgment[3] on the negligent misrepresentation claim.

### C. The Declaratory Relief Claim Against Okie Dokie

Burlington moves the court for "a declaration that D.C. Code § 31-4314 defeats coverage under the Policy for the Underlying Actions."[4] Under D.C. Code § 31-4314, a false statement on an insurance application bars the right to recovery thereunder if "such false statement was made with intent to deceive or [the false statement] materially affected either the acceptance of the risk

---

[3] The court further notes that defendant C.J. Thomas' cross-motion for summary judgment consists of its opposition to the plaintiff's motion for summary judgment. Def. C.J. Thomas' Cross-Mot. for Summ. J. Without expressing any opinion as to whether "the chief purpose of the Cross-Motion is to provide C.J. Thomas the opportunity to have the 'last word' through a reply in support of its Cross-Motion," Pl.'s Opp'n to Def. C.J. Thomas' Cross-Mot. For Summ. J., the court reminds the parties that "each individual summary judgment motion must be evaluated independently" and that "cross-motions for summary judgment are no different than a solitary summary judgment motion." 11 JAMES WM. MOORE ET AL., MOORE'S FED. PRACTICE § 56.10[6] (3d. ed. 2004); see also Huffman v. Western Nuclear, Inc., 486 U.S. 663, 664 n.11 (1988) (stating that "[w]hile [the defendant] styled its response to respondents' motion for summary judgment as a cross-motion for summary judgment as well as a memorandum in opposition, [the defendant's] successful opposition to respondents' motion is insufficient to establish that it is entitled to summary judgment in its favor."

[4] Pursuant to 28 U.S.C. § 2201, the court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

or the hazard assumed by the company." For the reasons that follow, the court grants Burlington's motion for declaratory relief.

### 1. The Insurance Application Contained a False Statement

The insurance application stated that Dream's liquor sales were $1,000,000 and its food sales were $3,000,000. Okie Dokie's Opp'n at 5. Marcus Barnes, Dream's owner, states that these numbers are not representative of Dream's sales. *Id.* According to Barnes, "we would never have said that it was going to be more food than liquor because we don't do more food than liquor. We are more night-life than we are restaurant." *Id*. The application, in other words, contained a false statement.

Okie Dokie argues that C.J. Thomas "unilaterally" provided the sales figures to Burlington and is consequently not liable for the false statement on the application. *Id*. Assuming that Okie Dokie's assertion is true, however, does not change the court's conclusion because Okie Dokie is liable for C.J. Thomas' misstatement. C.J. Thomas was acting as Okie Dokie's agent. *Travelers Indem. Co. v. Booker*, 657 F. Supp. 280, 286 (D.D.C. 1987) (explaining that brokers "employed to procure insurance . . . are agents of the insured). Principals are liable for the tortious acts of their agents. *Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-66 (1982). *Assuming arguendo* that C.J. Thomas is responsible for the false statement on the insurance application, Okie Dokie still could not disclaim liability by arguing that its agent was at fault.

**2. The Sales Figures Materially Affected Burlington's Decision to Insure Okie Dokie**

According to the plaintiff, the sales figures listed on the insurance application materially affected Burlington's decision to insure Okie Dokie. Pl.'s Mot. at 3. Okie Dokie does not substantively deny that the sales figures on the application materially affected Burlington's decision to provide coverage.[5] In the District of Columbia, a false statement is material if it "concerns a matter which would reasonably cause the insurer to consider, either not issuing the policy because of increased risk, or issuing the policy with an increased premium." *Johnson v. Prudential Ins. Co. of Am.*, 589 F. Supp. 30, 35 (D.D.C. 1983).

Burlington submitted a binder[6] to its agent[7] showing that it considered the level of alcohol sales to be an important factor in its decision to cover Okie Dokie. Okie Dokie's Opp'n at 10-11. Specifically, the plaintiff stated that it was not interested in the Okie Dokie account if liquor sales

---

[5]   Okie Dokie argues that it is entitled to discovery to refute the plaintiff's claim that the sales figures materially affected the plaintiff's decision to insure it. Okie Dokie's Opp'n at 8. Specifically, Okie Dokie argues that it is "entitled to explore the past practices and decisions made by Burlington with reference to issuing insurance to other nightclubs." *Id.* The court, however, is unpersuaded by this argument. First, discovery in this matter closed on September 30, 2005 and, to date, Okie Dokie has not provided any evidence to refute the plaintiff's assertion regarding the materiality of the sales figures. Second, as Okie Dokie recognizes, the court previously denied C.J. Thomas' motion to compel discovery on the plaintiff's past practices with regards to other nightclubs. *Id.*; *see also Burlington Ins. Co.*, 368 F. Supp. 2d 83, 88 (D.D.C. 2005) (stating that "[w]hether the plaintiff's guidelines prohibited insuring establishments that had more than 10%, 25%, 50% alcohol sales – or did not have any guidelines at all – is of no moment because the statements made by Burlington regarding the specific policy in question at the time it was issued are controlling"). Stated differently, Okie Dokie has not provided any evidence to refute the plaintiff's claim that the sales figures materially affected the plaintiff's decision to insure Okie Dokie.

[6]   "A binder is a preliminary arrangement that provides temporary protection for the insured until the insurer issues a formal policy." *Mark Andy, Inc. v. Hartford Fire Ins. Co.*, 229 F.3d 710, 715 (8th Cir. 2000).

[7]   The plaintiff did not deal with C.J. Thomas directly. C.J. Thomas' Statement of Material Facts ¶ 22. Rather, the plaintiff's agent, Heath Insurance Brokers, communicated with C.J Thomas. Pl.'s Mot. at 3; *see also* Okie Dokie's Opp'n at 10.

were higher than 25% of total sales.  The binder further states, "If we discover via audit that the liquor receipts are in fact higher than 25% we will non-renew the account." *Id.* at 11.  Okie Dokie argues that the plaintiff is not entitled to rescission because it "failed to reserve its right to immediate cancellation" and because the plaintiff instead chose non-renewal of the account as its exclusive remedy.

Okie Dokie's argument that the plaintiff is not entitled to declaratory relief under D.C. Code § 31-4314 because "the proper remedy was . . . non-renewal of the [p]olicy," as opposed to rescission, *id*. at 11, is misplaced.  First, Okie Dokie cites no case law for the proposition that the plaintiff was required to reserve its "right to immediate cancellation."  Second, the defendant's argument flies in the face of the clear language of D.C. Code § 31-4314.  "[P]roof that an application for insurance contains a false statement which materially affects the acceptance of risk or hazard assumed by the insurer is sufficient to defeat a claim under the policy." *Hill v. Prudential Ins. Co. of Am.*, 315 A.2d 146, 148 (D.C. 1974).  This means that the plaintiff is not limited to non-renewal of the policy where the application contained false statement. *Morgan v. Am. Univ.*, 534 A.2d 323, 330-31 (D.C. 1987) (holding that a contract provision that did not expressly abrogate a party's right to rescind a contract on the basis of a misrepresentation did not limit or abrogate the rescission rights the party may otherwise have under contract law principles); *see also* D.C. Code § 31-4314 (stating that a false statement in the application bars a right to recovery under the policy).

Okie Dokie further argues that Burlington was required to conduct an independent

investigation of the facts contained in the insurance application.[8] Okie Dokie's Opp'n at 9. Specifically, defendant Okie Dokie argues that the "notice of [a previous insurer's] cancellation based on the size of Dream's dance floor constituted reasonable notice that Dream was not a 'traditional' restaurant and that Burlington had a duty to undertake some investigation of Dream." Okie Dokie's Opp'n at 9. But, as this court stated previously in this same suit, an insurer has a right to rely on statements made in the insurance application. *Burlington Ins. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 49 (D.D.C. 2004). "An insurer's reliance on statements made in an insurance application is generally recognized as objectively reasonable." *Id.* This court further concluded that Burlington did not have any reason to know that Okie Dokie's representations were "untrue or unenforceable." *Id.*

Moreover, "an insurer is entitled to truthful responses to all questions on an application so that it may correctly evaluate the risk and determine whether the applicant meets its underwriting standards." *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 35 (7th Cir. 1971). The application stated that Dream is a restaurant/bar with dance floor. On its face, this statement does not indicate that Dream is a nightclub. Further, Okie Dokie provides no evidence supporting its implicit contention that only nightclubs have large dance floors. The court therefore concludes that Burlington did not have a duty to investigate the sales figures, and that the sales figures stated on the application materially affected Burlington's decision to provide coverage. The

---

[8] Okie Dokie asserts that a "*de minimis* effort" on Burlington's part would have given it notice that Dream is a nightclub. Okie Dokie's Opp'n at 11. Specifically, Okie Dokie contends that "the first 'hit' when entering 'Dream nightclub' in the Google search engine is for Dream." *Id.* But, the insurance application characterized Dream as a "Restaurant/Bar with Dance Floor. – This is a new restaurant." Compl. ¶ 25. The plaintiff, accordingly, would have no need to search for "Dream nightclub" on the internet. The court's own Google search for "Dream restaurant" did not list the defendant's establishment.

court accordingly grants the plaintiff's motion for a declaration that D.C. Code §31-4314 defeats coverage under the insurance policy.

### D. The Unjust Enrichment Claim Against Okie Dokie

The plaintiff also seeks indemnification from defendant Okie Dokie under the theory of unjust enrichment. Pl.'s Mot. at 7; Compl. ¶¶ 65-69. To recover under a theory of unjust enrichment in the District of Columbia,[9] a plaintiff "must show that [the defendant] was unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005); *see also Rapaport v. U.S. Dep't. of Treasury, Office of Thrift Supervision*, 59 F.3d 212, 217 (D.C. Cir. 1995) (citing DOBBS, LAW OF REMEDIES § 4.1(2)). D.C. Code § 31-4314 bars Okie Dokie's right to recovery under the policy because the insurance application contained a false statement that materially affected the plaintiff's decision to issue the policy. Although the District of Columbia statute bars Okie Dokie's right to recovery under the policy, Burlington paid to defend and settle the claims against Okie Dokie.[10] Pl.'s Mot. at 5. In short, Okie Dokie has received the benefit of the commercial general liability insurance coverage even though coverage is barred under D.C. Code § 31-4314. The court accordingly grants summary

---

[9] The parties in this case have not argued that District of Columbia law does not apply, and the court determines that District of Columbia law applies because the defendant received the alleged benefit in the District of Columbia. *ABB Daimler-Benz Transp.(N. Am.), Inc. v. Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 90 (D.D.C. 1998) (applying New Jersey law to an unjust enrichment claim where the alleged benefit conferred on the defendant accrued in New Jersey).

[10] The court notes that Burlington owed a duty to Okie Dokie to cover the settlement costs even though Burlington believed that coverage was voided under the policy. *Cent. Armature Works, Inc. Am. Motorists Ins. Co.*, 520 F. Supp. 283, 288 (D.D.C. 1981) (stating that "[t]he proper course for an insurer in such circumstances is to stay proceedings against the insured and seek resolution by way of declaratory judgment or to pay the settlement and seek indemnification from the insured").

judgment as to the unjust enrichment claim in favor of the plaintiff.

### E.  Prejudgment Interest

Burlington further requests that the court award prejudgment interest on its damages. Pl.'s Mot. 11.  Because prejudgment interest is a substantive matter, District of Columbia law applies to this issue.  *Turkmani v. Republic of Bolivia*, 273 F. Supp. 2d 45, 41 (D.D.C. 2002) (citing *Harris v. Mickel*, 15 F.3d 428, 429-30 (5th Cir. 1994)).  Under District of Columbia law, "[i]n an action to recover damages for a wrong the judgment for the plaintiff shall bear interest." D.C. Code § 15-109.

District of Columbia law is unclear as to whether a plaintiff in a tort action may recover prejudgment interest.  *See Williams Enters., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 238 (D.C. Cir. 1991) (explaining that "[i]t remains unclear whether prejudgment interest is available in a negligence action"); *Duggan v. Keto*, 554 A.2d 1126 (D.C. 1989) (concluding "that pre-judgment interest in tort actions in the District of Columbia is neither authorized nor forbidden by statute"); *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 856-57 (D.C. Cir. 1981) (holding "that neither common law nor the District of Columbia Code provides for the award of prejudgment interest in tort actions in the District of Columbia").  District of Columbia law, however, permits an "award of prejudgment interest where there was a contractual relationship, but the action was not framed as a breach of contract."  *Bell v. Westinghouse Elec. Corp.*, 507 A.2d 548, 555 n.5 (D.C. 1986).  Furthermore, this court has broad discretion to award prejudgment interest, and courts usually award prejudgment interest "absent some justification for withholding such an award."  *Fed. Mktg. Co. v. Impression Prods. Co., Inc.*, 823 A.2d 513, 532 (D.C. 2003).

In the instant case, Burlington has been deprived of the money it paid in the settlement for a period of over one year. Pl.'s Mot. at 11; Okie Dokie's Opp'n at 2. Instead of substantively responding to Burlington's argument that it is entitled to prejudgment interest, C.J. Thomas argues that Burlington is not entitled to prejudgment interest because it has "submitted no affidavit or other evidence showing that prejudgment interest is required under the applicable D.C. statute." C.J. Thomas' Opp'n at 12. C.J. Thomas cites D.C. Code § 15-109 as the applicable statute in its argument. *Id.* Because this section of the District of Columbia Code does not not require an affidavit to be submitted for an award of prejudgment interest,[11] the court finds that C.J. Thomas is liable for prejudgment interest.

Okie Dokie, similarly, does not substantively respond to the argument that Burlington is entitled to prejudgment interest. Citing no case law or statute, Okie Dokie argues that Burlington's "proper remedy" is non-renewal of the policy. Okie Dokie's Opp'n at 11. Because neither of the defendants has provided any substantive justification for withholding an award of prejudgment interest, and because the District of Columbia case law authorizes an award of prejudgment interest in situations such as the one at bar, the court grants the plaintiff's motion for an award of prejudgment interest.

---

[11] Specifically, D.C. Code § 15-109 states:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. In an action to recover damages for a wrong the judgment for the plaintiff shall bear interest.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for summary judgment on its negligent misrepresentation claim against C.J. Thomas, and grants the plaintiff's motion for summary judgment on its declaratory relief and unjust enrichment claims against Okie Dokie. The court also awards prejudgment interest to the plaintiff. An order directing the parties consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of October, 2005.

                                                        RICARDO M. URBINA
                                                        United States District Judge