UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BURLINGTON INSURANCE COMPANY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-2002 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 73, 75 |
| | : | | |
| OKIE DOKIE, INC. and C.J. THOMAS, INC., | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

GRANTING DEFENDANT OKIE DOKIE, INC.'S MOTION TO ALTER OR AMEND THE JUDGMENT;
DENYING THE PLAINTIFF'S MOTION TO ALTER THE COURT'S INTERLOCUTORY ORDER

I.  INTRODUCTION

This matter comes before the court on defendant Okie Dokie, Inc.'s ("Okie Dokie") motion to alter or amend the court's partial grant of summary judgment to the plaintiff,[1] Burlington Insurance Company ("Burlington"), and on the plaintiff's motion to alter or amend an interlocutory judgment. The court previously granted the plaintiff's motion for summary judgment against defendant Okie Dokie because Okie Dokie's insurance application contained a false statement that materially affected the plaintiff's decision to insure Okie Dokie. Defendant Okie Dokie now contends that new evidence demonstrates a dispute of material fact which undermines this court's grant of summary judgment. Because the new evidence materially alters

---

[1] Although defendant Okie Dokie, Inc. ("Okie Dokie") brings the instant motion pursuant to Federal Rules of Civil Procedure 54(b), 59(e), and/or 60(b), the court analyzes the motion under Federal Rule of Civil Procedure 59(e) because Okie Dokie filed its motion within 10 days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also McMillian v. Dist. of Columbia*, 2005 WL 3370820, at *3 n.1 (D.D.C. Dec. 13, 2005).

the court's previous analysis, the court vacates its order granting summary judgment against Okie Dokie.

The court also previously denied the plaintiff's motion for summary judgment on its negligent misrepresentation claim against defendant C.J.Thomas, Inc. ("C.J. Thomas") because the plaintiff failed to provide any evidence regarding C.J. Thomas' duty of care.  The plaintiff now moves to alter or amend the court's ruling denying summary judgment against defendant C.J. Thomas, arguing that evidence regarding an insurance broker's professional duty of care is unnecessary.  Because the plaintiff fails to show that justice requires revising the court's ruling, the court denies the plaintiff's motion to alter or amend the interlocutory judgment.

## II.  BACKGROUND

### A.  Factual Background

Defendant Okie Dokie is the owner and operator of Dream, a nightclub in the District of Columbia.  Compl. ¶¶ 8, 10.  Defendant C.J. Thomas, an insurance broker, prepared Dream's application for a general commercial liability insurance policy.  *Id.* ¶¶ 23, 24.  The application described Dream as a "Restaurant/Bar with Dance Floor," and explained that: (1) the previous insurance carrier cancelled its policy primarily because Dream had a dance floor; (2) Dream does not sponsor "Social Events;" and (3) Dream's $4 million in total sales is comprised of $3 million in food sales and $1 million in liquor sales.  *Id.* ¶¶ 25-30.  The plaintiff alleges that it relied on the statements in the application when it issued a commercial general liability policy to Okie Dokie on June 28, 2002.  *Id.* ¶¶ 34, 36.

On August 10, 2002, an underage drunk driver who had allegedly been drinking at

Dream, struck and killed a police officer named Hakim Farthing. *Id.* ¶ 44. Farthing's estate sued Okie Dokie for $50 million on October 1, 2003 ("*Farthing* Action"). *Id.* ¶ 42, 45. The plaintiff settled the *Farthing* Action for $410,000 on August 21, 2004. Pl.'s Mot. for Summ. J. at 5.

### B.  Procedural History

In response to the *Farthing* Action, Burlington filed this action against Okie Dokie and C.J. Thomas on September 26, 2003. With regard to Okie Dokie, Burlington's complaint seeks: (1) a declaration that Burlington had no duty to defend or indemnify Okie Dokie in the *Farthing* Action; (2) rescission of the insurance policy; and (3) restitution for all costs Burlington has paid with respect to the *Farthing* Action. Compl. ¶¶ 58, 64, 69. Burlington moved for summary judgment on the declaratory relief and unjust enrichment counts. Pl.'s Mot. for Summ. J. at 2. The court granted Burlington's motion on both counts because D.C. Code § 31-4314 defeats coverage under an insurance policy when an insurance application contains a false statement that materially affects the insurer's decision to insure the applicant. Mem. Op. (Oct. 18, 2005) ("Mem. Op.") at 1. The court also granted Burlington's motion for summary judgment on its unjust enrichment claim against Okie Dokie and awarded Burlington prejudgment interest. *Id.* at 1-2.

With regard to C.J. Thomas, Burlington seeks damages stemming from alleged negligent misrepresentation in the insurance application. Compl. ¶ 76. The complaint alleges that C.J. Thomas failed to disclose that Dream: (1) is a nightclub, (2) hosts concerts, (3) seeks the patronage of eighteen to twenty year olds, (4) derives over 25% of its revenue from the sale of alcoholic beverages, and (5) regularly features an "open bar." *Id.* ¶ 72.

On June 16, 2005, Burlington moved for summary judgment against C.J. Thomas, Pl.'s

Mot. for Summ. J. at 1, and on July 11, 2005, defendant C.J. Thomas cross-moved for summary judgment on the plaintiff's negligent misrepresentation claim, Def. C.J. Thomas' Opp'n to Pl.'s Mot. for Summ. J. at 1-2. The court denied Burlington's motion for summary judgment on its negligent misrepresentation claim because Burlington failed to show that defendant C.J. Thomas violated a duty of care. Mem. Op. at 1. The court also denied C.J. Thomas' cross-motion for summary judgment on the negligent misrepresentation claim. *Id.* at 9.

Defendant Okie Dokie now moves to alter or amend the court's order partially granting Burlington's motion for summary judgment. For its part, the plaintiff moves to alter or amend the court's ruling denying summary judgment against C.J. Thomas. The court now turns to these motions.

### III.  ANALYSIS

#### A.  Okie Dokie's Motion to Alter or Amend Summary Judgment

Defendant Okie Dokie presents additional evidence which was not before the court at the time it considered the plaintiff's motion for summary judgment. Def. Okie Dokie's Mot. for Recons. ("Okie Dokie's Mot.") at 1. Okie Dokie argues that this evidence demonstrates that there is a dispute of material fact concerning the plaintiff's reliance on the insurance application. *Id.* The plaintiff, on the other hand, asserts that the court should not reconsider its order granting summary judgment because Okie Dokie failed to present this evidence in its opposition to the plaintiff's motion for summary judgment. Pl.'s Opp'n to Def. Okie Dokie's Mot. for Recons. ("Pl.'s Opp'n") at 1. The plaintiff also maintains that the court rejected most of Okie Dokie's arguments when defendant C.J. Thomas raised them and that the defendant's goal is to preserve

points for appeal. *Id.* For the reasons that follow, the court grants Okie Dokie's motion and vacates its order granting the plaintiff's motion for summary judgment against Okie Dokie and awarding prejudgment interest.

### 1. Legal Standard for Rule 59(e) Motion to Alter or Amend Judgment

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also Mashpee Wamponoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or any other day appointed as a holiday by the President"). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208). Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

## 2. The Court Grants Okie Dokie's Motion to Alter or Amend the Order Partially Granting Summary Judgment

The court granted the plaintiff's motion for declaratory relief because D.C. Code § 31-4314 bars an insured party's right to recover under an insurance policy that contains a false statement. Mem. Op. at 1. To bar recovery, the false statement must either be "made with intent to deceive" or have "materially affected either the acceptance of the risk or the hazard assumed by the company." D.C. Code § 31-4314. The court determined that Okie Dokie's insurance application contained a false statement because, as Dream's owner admits, the numbers indicating Dream's liquor and food sales are not representative of Dream's actual sales. Mem. Op. at 10. Although Okie Dokie asserted that C.J. Thomas should be liable for this false statement, the court concluded that Okie Dokie was liable because C.J. Thomas was acting as Okie Dokie's agent. *Id.* The court also concluded that Okie Dokie did not substantially deny that the sales figures on the application materially affected the plaintiff's decision to insure because Okie Dokie failed to provide evidence to that effect. *Id.* at 11. Because new evidence alters this conclusion, the court vacates its order partially granting summary judgment against Okie Dokie and awarding prejudgment interest to the plaintiff.

Defendant Okie Dokie's new evidence[2] includes the deposition testimony of Kevin Pollard, Vice President of Heath Insurance Brokers, Inc. ("Heath"), Joseph Murphy, an

---

[2] Part of the new evidence consists of a policy endorsement which, according to Okie Dokie, demonstrates that Burlington Insurance Company ("Burlington") contractually waived its right to rescind the policy in cases of negligent misrepresentation. Okie Dokie's Mot. at 2. The policy endorsement, however, does not alter the court's decision because the policy endorsement does not expressly abrogate Burlington's right to rescind the policy based on material misrepresentation. *Morgan v. Am. Univ.*, 534 A.2d 323, 330 (D.C. 1987) (holding that a provision in a professor's employment contract which provided reasons for termination did not, as a matter of law, unambiguously limit or abrogate the rescission rights the employer otherwise had under contract law principles).

underwriter from Burlington, and B.J. Cleaver, Burlington's Claim Manager.  Okie Dokie's Mot. at 6.  Okie Dokie asserts that the new evidence demonstrates that the plaintiff had knowledge of facts that triggered its duty to investigate and that the plaintiff could not have relied on the sales figures contained in the application.  *Id.*  The plaintiff does not provide evidence to contradict Okie Dokie's arguments and instead maintains that Okie Dokie should have filed a Rule 56(f) affidavit with its opposition to the plaintiff's motion for summary judgment or, alternatively, should have sought leave to file a supplemental opposition.  Pl.'s Opp'n at 1-2.

     A nonmoving party can use a Rule 56(f) affidavit to oppose a motion for summary judgment by stating "that it has not had the opportunity to discover information that is essential to his opposition."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).  Courts, however, do not always require a Rule 56(f) affidavit, and the nonmoving party's objections before the court may serve as the functional equivalent of such an affidavit.  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).  Although it failed to file a Rule 56(f) affidavit, Okie Dokie objected to the plaintiff's motion for summary judgment by arguing that Burlington could not have relied on the sales figures contained in the insurance application.[3]  Def. Okie Dokie's Opp'n to Pl.'s Mot. for Summ. J. at 3.  Contrary to the plaintiff's argument, Okie Dokie's failure to provide a supplemental affidavit does not prevent Okie Dokie from

---

[3] Contrary to defendant Okie Dokie's argument that the court should not have considered the plaintiff's motion for summary judgment, Def. Okie Dokie's Mot. for Recons. ("Okie Dokie's Mot.") at 7 n.3, the court properly considered the motion because the parties had completed discovery.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that Rule 56(f) "mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (emphasis added).

providing the new evidence to the court in the present motion.[4]  *United Mine Workers of Am. 1974 Pension v. Pittsburg Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993) (affirming that a district court may reconsider its final judgments based on newly discovered evidence if that evidence was unavailable at the time of the judgment).

Although the new evidence does not correct the application's false statements, the evidence raises an issue of material fact as to whether the plaintiff reasonably relied on the sales ratios in the application.  Pollard testified that during his communications with Okie Dokie's previous insurer, he learned that their records reflected Dream's liquor sales of $2.7 million and food sales of $3.3 million.  Okie Dokie's Mot. at 7.  Pollard's testimony may demonstrate that the plaintiff knew that Dream previously provided another insurance carrier with a significantly different food to liquor sales ratio.  Because Pollard works at Heath, the plaintiff's authorized agent, Pl.'s Mot. for Summ. J. at 3, Heath's knowledge of the different figures is imputed to the plaintiff.  *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995) (explaining that an agent's knowledge is imputed to a principal unless the agent's interests are adverse to the principal's interests); *see also Bowen v. Mt. Vernon Sav. Bank*, 105 F.2d 796, 798 (D.C. Cir. 1939).  While an insurance company "need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application," *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 36 (7th Cir. 1991), an insurer may not rely on information that it knows to be false, *Gov't Employees Ins. Co. v. Govan*, 451 A.2d 884, 886 (D.C. 1982).  The knowledge that Okie Dokie gave a previous insurer sales figures that differed from those in the application at

---

[4] Okie Dokie's failure to provide a Rule 56(f) affidavit, however, precluded the court from considering such evidence at the time it entered its order for partial summary judgment.

issue creates a factual dispute as to whether Burlington was on "inquiry notice" and whether, as a matter of "reasonable prudence," Burlington should have inquired further into the information in the application. *Id.*

Not only does the new evidence create an issue of material fact as to whether the plaintiff reasonably relied on the sales figures in the application, the testimony from Murphy and Pollard also creates a factual dispute as to whether the plaintiff was aware that the sales figures contained in the insurance application were estimates. Okie Dokie's Mot., Ex. 4 ("Murphy Dep.") at 82:8-10; Okie Dokie's Mot., Ex. 3 ("Pollard Dep.") at 55:14-24. "An action for misrepresentation generally will lie only if there has been a conscious misrepresentation of a material fact," and "a prediction, opinion, or promise ordinarily [is not] a sufficient predicate for such an action as between parties truly dealing at arms' length."[5] *Day v. Avery*, 548 F.2d 1018, 1025-26 (D.C. Cir. 1976). Consequently, it is questionable whether the estimates in the application materially affected Burlington's acceptance of risk in insuring Okie Dokie. *C.f. Hill v. Prudential Life Ins. Co. of Am.*, 315 A.2d 146, 148 (D.C. 1974) (concluding that a false statement in an application for insurance will bar the right to recover under the policy if it is shown that the statement "materially affect[s] the acceptance of the risk or the hazard assumed by the insurer").

In light of the new evidence, the court grants defendant Okie Dokie's Rule 59(e) motion and vacates its prior decision partially granting summary judgment against Okie Dokie. The

---

[5] Where the speaker has superior knowledge and knows that the recipient will be guided by the speaker's opinion, an opinion may form the basis of a misrepresentation action. *See Day v. Avery*, 548 F.2d 1018, 1026 (D.C. Cir. 1976). This exception, however, does not apply in this case because the plaintiff had access to information that could have allowed it to confirm the sales figures through its agent, Heath. The plaintiff could have also conducted an audit, as it was allowed to do under the insurance contract, after issuing the policy.

availability of evidence from Burlington's employees and its agent is such that a reasonable factfinder could return a verdict for Okie Dokie. As such, summary judgment is improper in this case. *Anderson*, 477 U.S. at 248 (stating that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"). Consistent with its reversal, the court also vacates its award of prejudgment interest.

### B. The Plaintiff's Motion to Alter or Amend the Interlocutory Order Denying Summary Judgment Against C.J. Thomas[6]

The court denied the plaintiff's motion for summary judgment against C.J. Thomas because it concluded that the plaintiff failed to meet its burden of showing that C.J. Thomas failed to act "with reasonable care and skill expected of an insurance agent acting under similar circumstances." Mem. Op. at 8. The plaintiff argues that "justice requires" that the court revise its order denying summary judgment because the court does not need evidence regarding the relevant standard of care owed by C.J. Thomas. Pl.'s Mot. to Revise Ruling ("Pl.'s Mot.") at 1. Specifically, the plaintiff argues that the court should alter or amend its judgment because (1) the duty of care at issue is the ordinary duty assumed by any person who engages in supplying information; (2) even if an insurance broker's professional duty of care is relevant, C.J. Thomas' actions provide enough evidence for an inference of negligence. *Id.* In opposition, C.J. Thomas argues that the court should deny the plaintiff's motion because the plaintiff does not present any new arguments or evidence. Alternatively, C.J. Thomas asserts that the new evidence demonstrates that Burlington could not have reasonably relied on the estimates provided in the application. Def. C.J. Thomas' Opp'n to Pl.'s Mot. to Revise Ruling ("C.J. Thomas' Opp'n") at

---

[6] The court's order denying summary judgment is interlocutory because it did not dispose of the entire case on the merits. *Moore v. Hart*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004).

2. For the reasons that follow, the court denies the plaintiff's motion to alter or amend judgment.

### 1. Legal Standard for Rule 54(b) Motion to Alter or Amend an Interlocutory Order or Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Muwekma Tribe v. Babbitt,* 133 F. Supp. 2d 42, 47-48 (D.D.C. 2001); *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000). The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e)[7] and 60(b).[8] Relief from interlocutory orders and judgments is available under the standard, "as justice requires." *Childers,* 197 F.R.D. at 190 (citing FED. R. CIV. P. 60(b) Advisory Comm. Notes).

Furthermore, while the law of the case doctrine does not automatically apply to interlocutory decisions, *Langevine v. Dist. of Columbia*, 106 F.3d 1018, 1022-23 (D.C. Cir. 1997), the court maintains its underlying rationale as applicable. That doctrine "posits that when

---

[7] Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*)).

[8] Under Rule 60(b) courts may grant relief from judgments for: (1) mistake, inadvertence, surprise, or excusable neglect/newly discovered evidence that the moving party could not have discovered through its exercise of due diligence; (2) newly discovered evidence that the moving party could not have discovered through its exercise of due diligence; (3) fraud, misrepresentation, or other misconduct by the adverse party, but such must have prevented him from fully and fairly presenting his case and that fraud is attributable to the other party or his counsel; (4) void judgments (i.e., the court lacked personal or subject matter jurisdiction in the case, acted in a manner inconsistent with due process, or proceeded beyond the powers granted to it by law); (5) judgments that have been satisfied released or discharged or when there has been a material change in the controlling law used in reaching that judgment, or when it is no longer equitable that the judgment should have prospective application; and finally; and (6) any reason justifying such relief. FED. R. CIV. P. 60(b); *Lepkowski v. Dep't of Treasury*, 804 F.2d 1310, 1311-12 (D.C. Cir. 1986).

a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Id*. The law of the case doctrine, however, "is not an inexorable command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise judicial practice." *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10, 17 (D.C. Cir. 1980) (quoting *Carpa v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir. 1978)); *see Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (noting that the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power"); *Virgin Atlantic Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (stating that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). Given the good sense of this doctrine, nothing prevents the court from applying the rationales of the law of the case doctrine to guide a Rule 54 decision. *Virgin Atlantic Airways*, 956 F.2d at 1255 (holding that "[e]ven if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine").

    The court is mindful that

> [a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson*, 486 U.S. 800 at 817 (quoting *Arizona*, 460 U.S. at 618 n.8).

The advisory notes to Rule 60(b) guides that "interlocutory judgments are . . . left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R. CIV. P. 60(b) Advisory Comm. Notes. Finally, the D.C. Circuit has confirmed that pursuant to the district court's plenary powers, it may review and amend interlocutory decisions when it is "consonant with equity." *Schoen v. Wash. Post*, 246 F.2d 670, 673 (D.C. Cir. 1957); *see also Childers,* 197 F.R.D. at 190.

### 2. The Court Denies the Plaintiff's Motion to Alter or Amend the Order Denying Summary Judgment Against C.J. Thomas

The court disagrees with the plaintiff's assertion that justice requires the court to alter its order denying summary judgment against C.J. Thomas. As the court previously concluded, C.J. Thomas owed a duty of care as a "commercial supplier of information . . . to those who are intended to receive the information, even if the recipient is a third party, like Burlington, that has no privity with the supplier." Mem. Op. at 7. "In negligence actions, the standard of care by which the defendant's conduct is measured is often stated as that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979) (internal citations omitted). When dealing with professional negligence, "the duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes." *Id.*

The plaintiff argues that no expert testimony or evidence is necessary because C.J. Thomas' breach of its duty of care is readily apparent. Pl.'s Mot. at 1. Specifically, Burlington argues that C.J. Thomas violated its duty of care when Lisa A. White, an account executive at C.J. Thomas, changed the estimated liquor sales on the liquor liability application from $1.5

million, or 40% of total sales, to $1 million, or 25% of total sales. Pl.'s Mot. at 6-7. The breach is allegedly evident because White's "best guess" for the discrepancy between the statements in the two applications is that she completed the later application from her memory of her conversations with Okie Dokie's owners. Pl.'s Mot. for Summ. J., Ex. B ("White Dep.") at 115. White then relied on the liquor liability insurance application when filling out Burlington's general commercial liability application and, therefore, used the $1 million figure. Pl.'s Mot. at 3. The plaintiff characterizes White's actions as a "clerical error" and argues that expert testimony is not needed to prove the negligence. Pl.'s Mot. at 1, 4 (citing *Canterbury v. Spence*, 464 F.2d 772, 792 (D.C. Cir. 1972) for the proposition that lay witness testimony can completely establish that the failure to disclose particular risk information constitutes negligence).

There is, however, evidence suggesting that White did not consider the change in estimates in the liquor liability application to be material to Burlington's general commercial liability application and that White simply inserted the most recent sales figures in the general commercial liability application. White testified that the change in the estimated liquor sales did not "raise any red flags with her" because the liquor liability application only required that an establishment classified as a restaurant have liquor sales that are less than 75% of its annual total sales. White Dep. at 160:1-11. Further, White explained that it did not seem strange to her that Dream's estimates had changed because "it was a new business." *Id.* at 153:4-6. Contrary to Burlington's assertions, White was not sure whether the most recent estimates communicated to her from Okie Dokie were 40% or 25%. *Id.* at 159:6-9. White testified that "it could be possible that it was reverse order, when we initially talked, it was 1-1/2 and then it went one to three." *Id.* White's testimony raises doubts as to whether White changed the numbers based on her faulty

memory or whether she changed the figures consistent with the information Okie Dokie provided. Further, White could have reasonably concluded that she was under no duty to report the different estimates to the plaintiff because these numbers were "[p]retty much guesses" and did not "raise any red flags." *Id.* at 153:10, 160:1-11.

The plaintiff has again failed to show that no reasonable person or insurance agent in White's circumstances would have acted as she did. Mem. Op. at 8. The cases Burlington has cited do not establish as a matter of law that an insurance agent breaches the duty of care when it fails to notify the insurance company of changes in unrelated insurance applications. Regardless of whether expert testimony is necessary, Burlington has failed to show that the duty of care required C.J. Thomas to notify it of the different estimates provided in unrelated insurance applications. *Id.* at 8. Consequently, Burlington has failed to show that the court's decision was "clearly erroneous and would work a manifest injustice." *Christianson*, 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618 n.8).[9]

---

[9] The court again notes that its denial of the plaintiff's motion to alter its decision on summary judgment does not automatically entitle defendant C.J. Thomas to win on its cross-motion for summary judgment. 11 JAMES WM. MOORE ET AL., MOORE'S FED. PRACTICE § 56.10[6] (3d. ed. 2004). Whether C.J. Thomas failed to exercise reasonable care by not giving Burlington the sale ratios from other insurance applications is still an issue of material fact. This court has recognized that "[t]he duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes." Mem. Op. (Oct. 18, 2005) at 7 (citing *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)). Because insurance agents are professionals with special training and experience, *MacNamara*, 407 A.2d at 560-61, Burlington could present evidence demonstrating that C.J. Thomas breached its professional duty. The court accordingly denies C.J. Thomas' request, stated in its opposition to the plaintiff's motion to alter or amend judgment, for an order granting summary judgment in its favor.

## IV.  CONCLUSION

For the foregoing reasons, the court grants defendant Okie Dokie's motion to alter or amend the order granting partial summary judgment and denies the plaintiff's motion to alter the order denying summary judgment on its negligence representation claim against C.J. Thomas. An order directing the parties consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of July, 2006.

RICARDO M. URBINA<br>
United States District Judge